IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                              Case No. 3:10-CR-13
                                              JUDGE BAILEY

ANDREW SEMAN,

        Defendant.

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT GRANT, IN PART, AND DENY, IN PART, DEFENDANT'S MOTION TO SUPPRESS [25]**

## I.    INTRODUCTION

On March 17, 2010, the Federal Grand Jury for the Northern District of West Virginia, Martinsburg Division, indicted Defendant Andrew Seman aka "Snake" ("Defendant") with three counts of possession with intent to distribute heroin and one count distribution of heroin. On May 12, 2010, this matter came before the Court for an evidentiary hearing on Defendant's Motion to Suppress [25]. Defendant appeared in person and by counsel Nicholas J. Compton, Assistant Federal Public Defender, and the United States ("Government") appeared by counsel Erin K. Reisenweber, Assistant United States Attorney. After considering the testimony at the evidentiary hearing; the arguments and motions by the parties; and the applicable law, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge regarding Defendant's Motion to Suppress [25].

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Report and Recommendation that the District Court Grant Defendant's Motion to Suppress the Evidence Seized on September 4, 2008

#### 1. Testimony from the Evidentiary Hearing

At the May 12, 2010 evidentiary hearing, Corporal Andrew Evans testified that on August 26, 2008, August 28, 2008, and September 4, 2008, the Eastern Panhandle Drug and Violent Crimes Task Force ("Task Force") conducted controlled narcotics purchases from the Defendant using Christina Saylor as a Confidential Informant ("CI"). Corporal Evans testified that Ms. Saylor assisted the Task Force in a total of 40 controlled purchases involving several alleged narcotics distributers, including Defendant. Corporal Evans testified that it is standard procedure for the Task Force to perform a full body search on CIs before and after controlled purchases. However, the Task Force was unable to perform a full body search on Ms. Saylor during the 40 controlled purchases because there were no female officers available. Corporal Evans noted that the Task Force did not perform field tests on narcotics obtained from the controlled purchases but instead submitted the narcotics to the state laboratory in Charleston, West Virginia. However, at that time, the laboratory had a six month backlog in processing narcotics submissions. As a result of this backlog and the inability to conduct a full body search on female CIs, the Task Force was unaware that in all of Ms. Saylor's 40 controlled purchases, she concealed the authentic purchased heroin and instead turned over Vitamin B made to resemble heroin. After the Task Force discovered that Ms. Saylor was switching heroin for Vitamin B during controlled purchases, they decided not to charge any of the alleged defendants involved in her transactions. For this reason, the Government did not present an indictment to the Grand Jury for distribution of heroin against Defendant for the controlled purchases with Ms. Saylor. However, on September 4, 2008, following the controlled purchase with

Ms. Saylor, the Defendant was pulled over, arrested, and later indicted with Count One (1), possession with intent to distribute heroin.

Trooper Ellwanger testified that prior to the controlled purchase on September 4, 2008, Sergeant Dean Olack of the Task Force arranged for State Troopers to provide a surveillance officer and a uniformed officer to assist with the arrest of Defendant. The controlled purchase took place at the McDonald's in Inwood, West Virginia. Trooper Ellwanger served as the surveillance officer and stationed himself where he could see the Defendant's vehicle but he could not see members of the Task Force during the controlled purchase. As the surveillance officer, Trooper Ellwanger communicated to the uniformed officer, Trooper Campbell, that the Defendant was driving a white Chrysler Sebring. Trooper Ellwanger also communicated the license plate number and direction of travel to Trooper Campbell. Trooper Ellwanger instructed Trooper Campbell that he needed to find probable cause to stop the Defendant without revealing knowledge of the controlled purchase, in order to protect the identity of the CI. On cross-examination, Trooper Ellwanger testified that he did not recall any other significant information concerning the vehicle.

Trooper Campbell testified that he stationed himself further from the site of the controlled purchase. Trooper Campbell testified that after receiving the communications from Trooper Ellwanger, he saw a white vehicle exit the McDonald's and drive passed where he was stationed. Trooper Campbell testified that he observed damage to the front right portion of the vehicle, and that he stopped the Defendant based on checking the safety of the vehicle. Trooper Campbell stated that stopping someone for vehicle damage is permissible under the state defective equipment statute. After stopping the Defendant, Trooper Campbell asked the Defendant whether he had narcotics in the vehicle. Trooper Campbell testified that he asked about the narcotics partly because of his

knowledge of the controlled purchase. Trooper Campbell stated that the Defendant appeared nervous. Trooper Campbell asked for permission to search the vehicle, and he testified that the Defendant consented to the search. Trooper Campbell did not obtain written consent for the vehicle search. Trooper Campbell seized heroin from inside the vehicle and from the ground outside the passenger door. On cross-examination, Trooper Campbell stated that it is his standard procedure to ask about narcotics and weapons on all traffic stops. Defense counsel asked whether Trooper Cambell saw if the Defendant had a state inspection sticker issued one month prior on the windshield. Trooper Campbell testified that he did not remember an inspection sticker but he did recall that the vehicle had a dealership license plate.

On cross-examination, defense counsel asked Corporal Evans if he would be surprised to know that the Defendant's vehicle was destroyed at the towing facility. Corporal Evans testified that it is standard practice to destroy impounded vehicles that remain unclaimed after 30 days.

### 2. Applicable Law and Recommendation to the District Judge

> The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of this provision. *See Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 1395 (1979); *United States v. Martinez-Fuerte*, 428 U.S. 543, 556, 96 S. Ct. 3074, 3082 (1976); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574, 2578 (1975). An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *See Prouse*, *supra*, 440 at 659, 99 S. Ct. at 1399; *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S. Ct. 330, 332 (1977) (per curiam).

*Whren v. U.S.*, 517 U.S. 806, 116 S. Ct. 1769 (1996). At the May 12, 2010 evidentiary hearing,

Trooper Campbell testified that he stopped the Defendant because he observed damage to the front right portion of the vehicle. However, the Court did not hear testimony of the extent of the damage to the vehicle, and the Government did not submit any photographs or a description of the alleged damage. Moreover, Sgt. Olack's report did not mention any front end damage in the vehicle description. The Government contends that Trooper Campbell also had probable cause to stop the Defendant because of the controlled purchase. However, the CI was found to be switching heroin for Vitamin B during controlled purchases, and authorities declined to charge the defendants involved in any of her transactions. Therefore, the Undersigned Magistrate Judge recommends that the District Court GRANT the Defendant's Motion to Suppress the Evidence seized on September 4, 2008.

**B.     Report and Recommendation that the District Court Deny Defendant's Motion to Suppress the Evidence Seized on October 27, 2009**

**1.     Testimony from the Evidentiary Hearing**

At the May 12, 2010 evidentiary hearing, Patrolman Justin Harper of the Martinsburg City Police Department testified that on October 27, 2009, he executed a traffic stop on Defendant. Patrolman Harper stated that he was following a few car lengths directly behind a vehicle when he witnessed the vehicle cross the center of road, thereby causing an oncoming car to swerve into the street parking area of the road in order to avoid the vehicle. At that point, Patrolman Harper activated his colored lights to signal the driver to pull over. Patrolman Harper testified that the driver did not immediately pull over despite available space but continued driving for approximately one and one-half blocks before pulling over and blocking the entrance to Martinsburg Optical. After approaching the driver of the vehicle, Patrolman Harper recognized the driver as the Defendant because he had encountered him on prior arrests for controlled substances. Patrolman Harper noted

that the Defendant's speech was slurred and he was blinking and talking slowly. Patrolman Harper decided to conduct a field sobriety test and performed a pat down prior to beginning the test. During the pat down, Patrolman Harper found over $4,500 in cash. He asked the Defendant why he had such a large sum of money, and the Defendant said he was saving for a wedding. Prior to this incident, Patrolman Harper had received information that an older white male with the first name of "Andrew" was selling heroin at hotels and that the person's son had just died of a drug overdose. Patrolman Harper opted not to perform the field sobriety test after discovering from dispatch that the Defendant had an outstanding warrant for his arrest. After learning of the Defendant's outstanding warrant, Patrolman Harper arrested the Defendant and placed him in the police vehicle. At this point, Patrolman Harper conducted an inventory search of the Defendant's vehicle since it would be towed and impounded. Patrolman Harper testified that he always performs inventory searches on vehicles that will be towed. The inventory search revealed drug paraphernalia. Patrolman Harper also walked the route that the Defendant drove before pulling over and found heroin on the ground wrapped in the same cellophane cigarette wrapping that was located in the Defendant's vehicle. On the way to processing, the Defendant asked what would become of his cash because he won the money in a poker game the night before. On cross-examination, defense counsel asked Patrolman Harper why he listed on the vehicle inventory sheet that he found a TomTom GPS device in the Defendant's vehicle but he did not list that he allegedly found a needle, dirty spoon, or cellophane wrapper. Patrolman Harper responded that he did not list those items on the vehicle inventory sheet because he considered them "trash."

### 2. Applicable Law and Recommendation to the District Judge

> As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic

violation has occurred.

*Whren*, 517 U.S. at 810, 116 S. Ct. at 1772.

[A]n officer who has reasonable suspicion to believe that a vehicle contains illegal drugs may order its occupants out of the vehicle and pat them down for weapons. *See United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998). Because [the officer] detected marijuana in the [vehicle], he was authorized to conduct a pat-down for weapons...Thus, the drugs discarded by [the defendant] during the ensuing chase and his subsequent statement to [the officer] were not the fruit of an unconstitutional seizure, and the district court did not err in denying the motion to suppress.

*See U.S. v. Rooks*, 596 F.3d 204 (4th Cir. 2010).

Police officers frequently perform inventory searches when they impound vehicles or detain suspects. *See...South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S. Ct. 3092, 3100 (1976) (holding admissible evidence discovered during the impoundment of an illegally parked automobile). Such searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S. Ct. 738 (1987); *see also United States v. Banks*, 482 F.3d 733, 739 (4th Cir. 2007) ("A proper inventory search is merely an incidental administrative step following arrest and preceding incarceration, conducted to protect the arrestee from theft of his possessions, to protect the police from false accusations of theft, and to remove dangerous items from the arrestee prior to his jailing.")...In addition, the facts in this case support the conclusion that the inventory search was performed in good faith. After placing [the defendant] under arrest, [the officer] reasoned that the car would need to be towed because it was on private property and there "was no other driver at that time to take the vehicle away." Only after making such a determination did [the officer] begin the inventory search of the vehicle, and he performed this search because the "department policy at the time stated that [he] had to take full inventory of the vehicle." Under these circumstances, it is entirely reasonable for an officer to perform an inventory search, *see*, *e.g.*, *United States v. Hartje*, 251 F.3d 771, 776 (8th Cir. 2001).

*See U.S. v. Matthews*, 591 F.3d 230, 235 & n.7 (4th Cir. 2009).

> When a person voluntarily abandons his privacy interest in property, his subjective expectation of privacy becomes unreasonable, and he is precluded from seeking to suppress evidence seized from it. *United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir.1995); *see also Abel v. United States*, 362 U.S. 217, 241, 80 S. Ct. 683 (1960) ("There can be nothing unlawful in the Government's appropriation of abandoned property"). "[T]he proper test for abandonment is not whether all formal property rights have been relinquished, but whether the complaining party retains a reasonable expectation of privacy in the [property] alleged to be abandoned." *United States v. Haynie*, 637 F.2d 227, 237 (4th Cir.1980).

*U.S. v. Stevenson*, 396 F.3d 538 (4th Cir. 2005).

First, Patrolman Harper had probable cause to stop the Defendant because he witnessed the traffic violation of the vehicle crossing the center of the road. Second, Patrolman Harper had a sufficient basis for performing the pat down search of the Defendant prior to initiating a sobriety test since Patrolman Harper had witnessed the Defendant crossing the center of the road; since he had encountered the Defendant on prior arrests for controlled substances; since the Defendant's speech was slurred and he was blinking and talking slowly; and since prior to this incident, Patrolman Harper had received information that an older white male with the first name of "Andrew" was selling heroin at hotels and that the person's son had just died of a drug overdose. Third, Patrolman Harper properly conducted an inventory search of the vehicle prior to towing, in accordance with the policy of his police department. Finally, the Defendant abandoned any interest in the heroin that was allegedly thrown from the vehicle before he pulled over. Therefore, the Undersigned Magistrate Judge recommends that the District Court DENY the Defendant's Motion to Suppress the Evidence seized on October 27, 2009.

## III. RECOMMENDATION AND CONCLUSION

The undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **GRANT, IN PART, AND DENY, IN PART,** Defendant's Motion to Suppress [25]. The Court notes the Government and the Defendant's objections to the ruling.

Within fourteen (14) days of receipt of service of this Report and Recommendation, any counsel of record may file with the Clerk of the Court any written objections to this Report and Recommendation. The party should clearly identify the portions of the Report and Recommendation to which the party is filing an objection and the basis for such objection. The party shall also submit a copy of any objections to the District Judge. Failure to timely file objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Report and Recommendation. 28 U.S.C. § 636(b)(1).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: May 17, 2010**

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE